**O**

# United States District Court
# Central District of California

JOE RUIZ SR. and JOE RUIZ JR.,

           Plaintiff,

    v.

BMW OF NORTH AMERICA, LLC, and
DOES 1 through 10, inclusive,

           Defendants.

Case No. 2:16-CV-01177-ODW-AGR

**ORDER DENYING DEFENDANT'S
MOTION FOR NEW TRIAL [103];
GRANTING, IN PART,
PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES [96]; &
DENYING PLAINTIFFS' MOTION
TO AMEND JUDGMENT [102]**

## I.  INTRODUCTION

On December 29, 2017, the jury returned a verdict in favor of Plaintiffs Joe Ruiz, Sr. and Joe Ruiz, Jr. and against Defendant BMW of North America, LLC. (Min., ECF No. 84.)  The jury found for the Ruizes on their claims for Breach of Express Warranty, and Breach of Implied Warranty, under California's Lemon Law, relating to their purchase of a 2014 BMW 428i.  (Spec. Verdict Form, ECF No. 85.) Now, BMW moves for a new trial and/or remittitur (ECF No. 103), and the Ruizes move for attorneys' fees (ECF No. 96), and to amend the judgment to include prejudgment interest.  (ECF No. 102.)  For the reasons set forth below, the Court **DENIES** BMW's Motion for New Trial (ECF No. 103), **DENIES** the Ruizes's

Motion to Amend the Judgment (ECF No. 102), and **GRANTS, IN PART**, the Ruizes's Motion for Attorneys' Fees.[1]  (ECF No. 96.)

## II.    FACTUAL BACKGROUND & VERDICT

On May 27, 2014, the Ruizes purchased a new 2014 BMW 428i from an authorized BMW dealer in Irvine, California.  (Declaration of Amy Smith ("Smith Decl."), Ex. A at 108:9–109:17, ECF No. 110-3.)  At the time they purchased the vehicle, it had approximately 60 miles on the odometer.  (*Id.* at 109:21–22.)

The Ruizes presented evidence to the jury that the vehicle exhibited problems from the start:

| Date | Complaint/Problem Area |
|------|------------------------|
| September 2, 2014 | Vehicle shakes |
| September 8, 2014 | Rough idle |
| April 1, 2015 | Service engine light on; fuel gauge issues |
| April 7, 2015 | Service engine light on; fuel gauge issues |
| April 8, 2015, 6:57 p.m. | "cust[omer] has requested to be taken out of the vehicle…" |
| April 8, 2015, 9:03 p.m. | "[customer states] talking about possible repurchase..." |
| April 13, 2015 | "he would like BMW to repurchase the veh[icle]…" |
| July 7, 2015 | Service engine light on; fuel gauge issues |
| July 9, 2015 | Vehicle shut off on the freeway |
| July 13, 2015 | Customer requests repurchase of vehicle |

(Smith Decl., Ex. A 141:3–143:18, Exs. D, G; Declaration of Jacqueline Chinery ("Chinery Decl."), Exs. A–C, ECF No. 103-2, 103-3, 103-4, 103-5.)

---

[1] After carefully considering the papers filed in support of and in opposition to the Motions, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

On July 30, 2015, after several requests and before the Ruizes filed this lawsuit, BMW offered to repurchase the vehicle with a deduction for the approximately 17,000 miles BMW claimed the Ruizes had driven it. (Chinery Decl., Ex. B.) The Ruizes declined the offer because BMW used 17,000, rather than 5,000, miles to calculate the mileage offset, and corresponding refund deduction. (Chinery Decl., Ex. C.)

At trial, the Court instructed the jury on the elements for Breach of Express Warranty, and Breach of Implied Warranty, both pursuant to California's Song-Beverly Act (the "Act"). (Jury Instr., ECF No. 89.) The jury found that BMW breached the express written warranty provided to the Ruizes by failing to repair the vehicle after a reasonable number of opportunities to do so, and failing to promptly offer to repurchase it. (Spec. Verdict 2–5, ECF No. 85.) The jury also found BMW acted willfully, warranting a maximum civil penalty of twice the total amount of damages. (*Id.*) The jury determined that BMW had not calculated the correct mileage deduction in its offer to repurchase, and found that the number of miles the vehicle was driven between the time of purchase and breach was 17,801, as compared to the 17,886 offered by BMW. (*Compare id.*, *with* Chinery Decl., Ex. B.) The jury also found in favor of the Ruizes on the implied warranty claim because the vehicle was not the same quality as those generally in the trade, and was not fit for its ordinary purpose. (Spec. Verdict 5–6.)

On January 29, 2018, the Court entered Judgment in favor of the Ruizes for $170,076.57. (Judgment, ECF No. 95.) The Judgment included $56,692.19 in total damages, calculated by adding the purchase price of the vehicle ($55,970.32), and incidental and consequential damages ($10,596.50), and subtracting the value of use ($9,874.63). The value of use was calculated based on the 17,801 miles the jury found the Ruizes drove the vehicle between purchase and breach. (Spec. Verdict 4–6.) In addition, the jury awarded twice the total damages ($113,384.38), as a civil penalty.

# III.   LEGAL STANDARDS

Each party requests relief from the Court on distinct procedural bases, and each has its own legal standard.

## A.   Motion for New Trial

A court may grant a motion for new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). One such ground is an excessive award of damages. *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 437–38 n.22 (1996). In reviewing an award for excessiveness, a court reviews the evidence in a light most favorable to the prevailing party, disturbing only those awards that it concludes are "grossly excessive or monstrous" or are "based on passion or prejudice." *Lambert v. Ackerly*, 180 F.3d 997, 1011 (9th Cir. 1999) (en banc) (internal citation omitted). Courts generally defer to a jury's award of damages unless it is "clearly not supported by the evidence." *In re First Alliance Mortg. Co.*, 471 F.3d 977, 1001 (9th Cir. 2006). "Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Tennant v. Peoria & Pekin Union Ry.*, 321 U.S. 29, 35 (1944); *see also Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001) (holding that a court "may not grant new trial simply because it would have arrived at different verdict….").

A motion for a new trial may be granted on insufficiency of evidence grounds "only if the verdict is against the 'great weight' of the evidence, or 'it is quite clear that the jury has reached a seriously erroneous result.'" *Venegas v. Wagner*, 831 F.2d 1514, 1519 (9th Cir. 1987) (quoting *Digidyne Corp. v. Data Gen. Corp.*, 734 F.2d 1336, 1347 (9th Cir. 1984)); *see also Union Oil Co. v. Terrible Herbst, Inc.*, 331 F.3d 735, 742 (9th Cir. 2003). A new trial under Rule 59(a) is only warranted where the moving party can show that the jury's verdict was "contrary to the clear weight of the evidence, based upon false or perjurious evidence, or involved a miscarriage of

justice…." *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000) (citing *Wharf v. Burlington Northern R.R. Co.*, 60 F.3d 631, 637 (9th Cir. 1995)).

**B.     Motion to Amend Judgment**

Federal Rule of Civil Procedure 59(e) allows a party to move to amend the judgment no later than 28 days after the entry of judgment. District courts have "considerable discretion" when addressing motions to amend a judgment under Rule 59(e). *Turner v. Burlington N. Santa Fe R.R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003). However, "a Rule 59(e) motion is an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir. 2014) (internal quotation marks omitted). "There are four grounds upon which a Rule 59(e) motion may be granted: 1) the motion is necessary to correct manifest errors of law or fact upon which the judgment is based; 2) the moving party presents newly discovered or previously unavailable evidence; 3) the motion is necessary to prevent manifest injustice; or 4) there is an intervening change in controlling law." *Turner*, 338 F.3d at 1063 (internal quotation marks, citations, and alterations omitted). "Since these criteria are not actually set forth in the text of Rule 59(e), a court 'enjoys considerable discretion in granting or denying the motion,' including for grounds other than those listed above." *United States ex rel. Begole v. Trenkle*, No. EDCV0601104VAPOPX, 2012 WL 13071028, at *4 (C.D. Cal. Jan. 26, 2012) (quoting *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011)).

**C.     Motion for Attorneys' Fees**

"In an action involving state law claims, we apply the law of the forum state to determine whether a party is entitled to attorneys' fees, unless it conflicts with a valid federal statute or procedural rule." *MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1282 (9th Cir. 1999). Documentation submitted in support of a motion for attorneys' fees must apprise the Court of the nature of the activity and should be

sufficient to satisfy the Court that the hours expended were actual, non-duplicative, and reasonable.  *See K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 78 F. Supp. 3d 1289, 1303 (C.D. Cal. 2015).

Reasonableness is generally determined using the "lodestar" method, where a court considers the work completed by the attorneys and multiplies "the number of hours reasonably expended on the litigation by the reasonable hourly rate."  *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993).  The moving party bears the burden of producing evidence that the billing rates and hours worked are reasonable.  *Id.* at 622–23.  "Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it."  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (citation omitted).

## IV.   DISCUSSION

### A. New Trial Motion

BMW seeks a new trial because: 1) the two-time civil penalty was excessive, and the result of "passion, prejudice, and bias;" and 2) the award of $10,596.50 in incidental and consequential damages was contrary to the law.  (Mot. 2, ECF No. 103.)

#### 1.    The Civil Penalty Was Supported by the Evidence

"The Song-Beverly Act 'regulates warranty terms' and 'give[s] recourse to the buyer of a new automobile that suffers from the same defect repeatedly, or is out-of-service for cumulative repairs for an extended period.'"  *Hatami v. Kia Motors Am., Inc.*, No. SA CV 08-0226 DOC, 2009 WL 1396358, at *2 (C.D. Cal. Apr. 20, 2009) (quoting *Murillo v. Fleetwood Enters., Inc.*, 17 Cal.4th 985, 989–90 (1998)).  "The Act 'is manifestly a remedial measure, intended for the protection of the consumer; it should be given a construction calculated to bring its benefits into action.'"  *Murillo*,

17 Cal.4th at 990 (quoting *Kwan v. Mercedes-Benz of N.A., Inc.*, 23 Cal. App. 4th 174, 184 (1994)).

California Civil Code section 1793.2(d)(2) provides, in part, "If the manufacturer…is unable to service or repair a new motor vehicle…to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer *shall* either *promptly replace* the new motor vehicle…or *promptly* make restitution to the buyer…." Cal. Civ. Code §1793.2(d)(2) (emphasis added). Where the buyer establishes that the manufacturer's failure to comply with the Act was "willful, the judgment may include, in addition to [compensation for the value of the vehicle], a civil penalty which shall not exceed two times the amount of actual damages." *Id.* § 1794(c).

The buyer does not need to request a repurchase of the vehicle; instead, the manufacturer must promptly offer to repurchase the vehicle where it has been given a reasonable opportunity to repair the defect. *Krotin v. Porsche Cars N. Am., Inc.*, 38 Cal. App. 4th 294, 302–03 (1995), *as modified on denial of reh'g* (Sept. 14, 1995) ("[T]he Act does not require consumers to take any affirmative steps to secure relief for the failure of a manufacturer to service or repair a vehicle to conform to applicable warranties-other than, of course, permitting the manufacturer a reasonable opportunity to repair the vehicle."); *see also Lukather v. General Motors, LLC*, 181 Cal. App. 4th 1041, 1050 (2010).

BMW first argues that, pursuant to *Dominguez v. American Suzuki Motor Corp.*, 160 Cal. App. 4th 53, 61 (2008), where a manufacturer makes a pre-litigation offer to repurchase, it is not subject to a civil penalty. (Mot. 5, ECF No. 103.) BMW claims its pre-litigation offer to purchase the car precludes a civil penalty. However, as pointed out by the Ruizes, *Dominguez* addressed a different subsection of the Act, which is not directed at "new motor vehicles." *Id.* at 60 ("[S]ection 1793.2, subdivision (d)(2), does not apply because a motorcycle is not considered a 'new motor vehicle' as defined by the statute."). Distancing the reasoning in *Dominguez*

from this case even more, the section addressed there did not include the word "prompt," which was the centerpiece of the Ruizes's case. *Id.* at 58 n.4. At trial, the Ruizes focused on BMW's failure to *promptly* offer to repurchase their vehicle, despite several requests for repurchase. The other cases cited by BMW are also distinguishable. *Hatami v. KIA Motors Am., Inc.*, No. SA CV 08–0226 DOC (MLGx), 2009 WL 1396358, at *5 (C.D. Cal. April 20, 2009) (granting summary adjudication on civil penalty issue where manufacturer offered to inspect and repair vehicle "to ensure that the vehicle truly was non-conforming and that restitution was applicable"); *Trout v. BMW of N.A.*, No. 2:04–cv–01466–BES–LRL, 2007 WL 602230, at *4 (D. Nev. Feb. 20, 2007) (applying Nevada law, which does not include requirement that repurchase be made promptly).

Willfulness under the Act simply means that the decision not to repurchase promptly was intentional. *Ibrahim v. Ford Motor Co.*, 214 Cal. App. 3d 878, 894 (1989) ("The instructions should have told the jury that a civil penalty could be awarded to plaintiff if the jury determined that Ford knew of its obligations but intentionally declined to fulfill them.") The Court instructed the jury that, "Willful means that BMW knew what it was doing and intended to do it." (Jury Instr. 62, ECF No. 89.) Furthermore, the jury could interpret lowball offers for reimbursement as evidence of willfulness. *See Bishop v. Hyundai Motor Am.*, 44 Cal. App. 4th 750, 758 (1996) (discussing lowball offers as potential evidence of willfulness).

Here, the jury heard evidence that the Ruizes requested repurchase on multiple occasions, despite not being required to do so by the Act, and that BMW refused to offer to repurchase the car until the Ruizes suffered a serious incident on the freeway. Call notes also indicate that, in April 2015, after the Ruizes requested repurchase for the third time, BMW "advised cust[omer] it is unlikely that BMW will repurchase the veh[icle] but would be happy to look into a reimbursement of one lease payment." (Smith Decl., Ex. D.) The jury could have reasonably construed this as a lowball offer, indicative of BMW's willfulness. BMW's witness also admitted that he had

been trained by BMW that a consumer need only bring their vehicle in for safety concerns twice to warrant repurchase. (Smith Decl., Ex. B at 88:7–11.) Yet, the Ruizes's repeated safety concerns did not promptly solicit a repurchase offer.

The jury found that BMW did not promptly offer to repurchase the vehicle, and that when it eventually did, in July 2015, it had not calculated the correct mileage offset. (Spec. Verdict 3.) BMW argues: "Although the jury found the mileage offset should be 17,801 miles, rather than 5,000 miles, they nevertheless found that BMW NA's offer to repurchase was not in the correct amount." (Mot. 6, ECF No. 103.) BMW claims that this evidences an inconsistent verdict. This is baffling because BMW's offer to repurchase included a set-off for 17,886 miles, not 17,801 miles. (Chinery Decl., Ex. B.) So, while the jury did not agree with the Ruizes's assertion that the set-off should be for 5,000 miles, they also disagreed with BMW's number, albeit not by much. This does not evidence an inconsistent verdict, and does not merit a new trial.

### 2. *Passion, Prejudice, & Bias Did Not Dominate the Jury's Verdict*

BMW next argues that the jury's verdict was the product of passion, prejudice, and a disdain for big companies. (Mot. 6–18.) BMW first takes issue with questions the Court posed during voir dire that resulted in various potential jurors relaying their "horror stories" of vehicle purchases gone wrong.

One prospective juror was a Costco loyalist who lauded Costco's return policy, and expressed her opinions that the "customer is always right," and that "BMW is a big corporation [so] they can afford to satisfy one customer that is truly upset…." (Chinery Decl., Ex. G at 53:5–14.) Others told tales of Ford, Infinity, Audi, Toyota, and Honda, to name a few, doing them wrong. (*Id.* at 36:6–38:16, 42:11–42:24, 44:15–45:17, 45:20–46:23, 47:1–18, 49:4–16.) In response to these stories, the Court discussed, at length, whether the jurors could put aside their experiences, and apply the law to the facts of this particular case, in an impartial manner. (Smith Decl., Ex. A at 34:19–73:12.) The Court also held two sidebars, which led to dismissing two jurors

for cause in light of their bad experiences with Honda and Audi. (*Id.* at 39:18–40:9, 60:2–17, 61:8–14.)

There were two jurors who arguably expressed potential bias that made it on the panel. One juror's brother was in-house counsel for Nissan, and Honda before that. (*Id.* at 68:21–69:14.) However, he hadn't spoken to his brother for 13 years, and assured the Court on questioning that he did not intend to call his brother during the course of the trial, adding that "[h]e wouldn't answer anyway…." (*Id.*) The other juror didn't have any bad personal experiences, but explained she felt biased because of hearing the other's stories. (*Id.* at 47:19–48:4.) Despite having a remaining peremptory challenge and the presence of these two jurors on the panel, BMW chose not to excuse them. (*Id.* at 75:22–78:8.)

BMW also contends the discussion during voir dire paired with the Ruizes's counsel's improper closing argument, resulted in an inflammatory verdict. (Mot. 17–18.) An attorney has many arrows in his quiver. The Ruizes's counsel chose to analogize this lemon law case involving a high-performance, luxury car to the struggles of national heroes, like Martin Luther King, Jr., Cesar Chavez, Rosa Parks, and Harriet Tubman. (Chinery Decl., Ex. H at 70:18–72:11.) While zesty and in bad taste, this bombastic hyperbole was not the only basis for the jury's verdict, if it was considered persuasive at all.[2] Yet, BMW did not object to this argument, or the allegedly biased jurors at any point before the Court entered judgment. BMW's failure to object is fatal to its new trial motion. *Kaiser Steel Corp. v. Frank Coluccio Const. Co.*, 785 F.2d 656, 659 (9th Cir. 1986) ("Nothing prevented [counsel] from raising this issue with the trial court well before the jury began its deliberations. This

---

[2]  In fact, after the jury returned its verdict and was speaking with counsel they told the Ruizes's counsel that his overreaching was ineffective. (See Declaration of Richard Wirtz ("Wirtz Decl.") ¶ 5.)  BMW objects to this paragraph of Wirtz's declaration on the grounds that it is irrelevant, hearsay, and lacks personal knowledge and foundation. (BMW's Objections to Wirtz Decl., Objection 1, ECF No. 112-7.)  The Court overrules BMW's relevancy, personal knowledge, and foundation objections, but sustains its objection on the basis of hearsay.  In any event, this evidence is not determinative of whether to grant BMW's motion for new trial.  With respect to BMW's other objections, the Court only addresses them to the extent it relies on the evidence.

action would have permitted the judge to examine the alleged prejudice and to admonish [counsel] or issue a curative instruction….").  Furthermore, as set forth above, the jury heard evidence that substantiates its verdict.  Accordingly, the Court **DENIES** BMW's new trial motion on these grounds.

     *3.    Incidental & Consequential Damages*

     BMW argues that the approximately $10,000 the jury awarded as incidental and consequential damages are not recoverable under the Act.  (Mot. 19–24.)  Joe Ruiz, Jr. testified without objection from defense counsel regarding how much he paid for DMV registration renewals, insurance premiums, and Uber rides.  (Smith Decl., Ex. A at 150:11–151:6, 151:10–152:8, 152:9–15, 152:16–20, 152:21–153:5.)  At trial, BMW objected to the jury instructions regarding incidental and consequential damages on the grounds that there were not facts elicited to support those instructions.  (Chinery Decl., Ex. H 6:12–11:6.)  The Court heard argument from both sides, and ultimately concluded that, while the evidence may not have been the strongest, there was sufficient evidence in the record to warrant instructing the jury on those measures of damages.  (*See id.*)  That the jury chose to believe the evidence presented, despite BMW's argument to the contrary, does not detract from the legitimacy of the jury's verdict.  *See Silver Sage Partners, Ltd.*, 251 F.3d at 819 (citing *U.S. v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999)) ("[A] district court may not grant a new trial simply because it would have arrived at a different verdict.")

     BMW cites *Kirzhner v. Mercedes-Benz USA, LLC*, 18 Cal. App. 5th 453, 458 (2017), for the proposition that, as a matter of law, consumers are not entitled to recover for items such as vehicle registration, gas, oil changes, etc., "which are more accurately characterized as a standard cost of owning any vehicle."  On February 21, 2018, the California Supreme Court granted review of *Kirzhner*, but denied requests for depublication of the opinion pending the Supreme Court's review.  *Kirzhner v. Mercedes-Benz USA*, 410 P.3d 1221 (Cal. 2018).  As urged by the Ruizes, *Kirzhner* has no precedential effect during the time it is awaiting review by the California

Supreme Court. Cal. R. Ct. 8.1115(e)(1) ("Pending review and filing of the Supreme Court's opinion…a published opinion of a Court of Appeal in the matter has no binding or precedential effect, and may be cited for potentially persuasive value only. Any citation to the Court of Appeal opinion must also note the grant of review and any subsequent action by the Supreme Court."). In addition to not having any precedential value, the Ruizes argue that the *Kirzhner* court did not address every piece of the statutory framework, rendering the reasoning of the decision faulty.

The Act allows for recovery of "charges for transportation…[,]any collateral charges such as sales or use tax, license fees, registration fees, and other official fees, plus any incidental damages to which the buyer is entitled under Section 1794, including, but not limited to, reasonable repair, towing, and rental car costs actually incurred by the buyer." Cal. Civ. Code § 1793.2(d)(2)(B). Section 1794 incorporates definitions of incidental and consequential damages from California Commercial Code section 2715:

> (1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.
> (2) Consequential damages resulting from the seller's breach include
>> (a) Any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise

Cal. Com. Code § 2715.

The plain language of the statute taken with its remedial purpose supports the Ruizes's interpretation of the incidental and consequential damages that are recoverable. *See Murillo*, 17 Cal.4th at 990 (holding the Act should be interpreted to support its remedial purpose). BMW cites a district court case to support its position

that the damages the jury awarded are not recoverable as a matter of law. *Robbins v. Hyundai Motor Am.*, No. SACV 14–00005–JLS (ANx), 2014 WL 4723505, at *5 (C.D. Cal. Aug. 7, 2014) (holding insurance payments not "collateral charges" under the Act). In addition to not being controlling, the *Robbins* opinion is distinguishable. There, the court dismissed the plaintiff's claims for insurance and subsequent registration charges on a motion to dismiss *with leave to amend*. *Id.* at *6. Furthermore, Hyundai conceded that insurance could constitute incidental damages "under certain circumstances," and even included an offer to repay the insurance costs in its repurchase letter. *Id.* at *5. However, the court held that plaintiff had failed to state a claim because she did not allege that Hyundai would not have reimbursed the charges despite its affirmative offer to do so. *Id.* at *6. Accordingly, *Robbins* is not persuasive.

Here, the Ruizes presented the jury with evidence of the amounts they paid in registration fees, Uber rides, and tires. BMW does not argue it ever offered to pay for these amounts. To the extent the jury did not believe the evidence, they were entitled to reduce those damages as they saw fit; in fact, the Court instructed the jury that it was not required to believe any of the evidence presented, and that it was the jury's duty to evaluate the evidence, and that it could discount evidence that it did not believe. The fact that the jury accepted the contested evidence presented is not a reason to overturn their verdict. Accordingly, the Court **DENIES** BMW's Motion in this regard as well.

**B.      The Ruizes's Motion for Prejudgment Interest**

The Ruizes seek prejudgment interest on their verdict, totaling approximately $20,000—although they propose several alternative calculations and interpretations of the facts and law. (Mot. for Int., ECF No. 106.) BMW argues that the Ruizes are not entitled to prejudgment interest, and, in any event, they improperly calculate the amount to which they claim they are entitled. (Opp'n to Mot. for Int., ECF No. 107.)

In a diversity action, whether a party is entitled to prejudgment interest is governed by state law. *Bangert Bros Const. Co., Inc. v. Kiewit Western Co.*, 310 F.3d 1278, 1297 (10th Cir. 2002). California Civil Code section 3287 provides the framework for awarding prejudgment interest. Section 3287(a) provides for mandatory prejudgment interest where the party "is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day…." Section 3287(b) allows the Court to award prejudgment interest in an action based on contract in the Court's discretion, and only from the date the plaintiff filed the action.

The Ruizes seek to distinguish *Duale v. Mercedes-Benz USA, LLC*, 148 Cal. App. 4th 718 (2007), despite its ready application to the facts of this case. In *Duale*, the court explained:

> Damages are deemed certain or capable of being made certain within the provisions of subdivision (a) of section 3287 where there is essentially no dispute between the parties concerning the basis of computation of damages if any are recoverable but where their dispute centers on the issue of liability giving rise to damage. Thus, [t]he test for recovery of prejudgment interest under [Civil Code] section 3287, subdivision (a) is whether defendant actually know[s] the amount owed or from reasonably available information could the defendant have computed that amount. The statute ... does not authorize prejudgment interest where the amount of damage, as opposed to the determination of liability, depends upon a judicial determination based upon conflicting evidence and it is not ascertainable from truthful data supplied by the claimant to his debtor. Thus, where the amount of damages cannot be resolved except by verdict or judgment, prejudgment interest is not appropriate.

*Duale*, 178 Cal. App. 4th at 729 (citations and quotations omitted). After considering this standard, the *Duale* court held that prejudgment interest was not appropriate because the jury was required to determine "(1) whether any of the many defects alleged in the complaint represented a nonconformity, (2) whether any such

nonconformity 'substantially impaired [the] use, value, or safety' of the vehicle, and (3) then to determine—for any such nonconformity—the mileage at which plaintiffs first presented the car to defendant for repair." *Id.* at 729–30.

Similarly, the jury here was required to evaluate the facts establishing liability, and the amount of damages, as determined by the proper set-off for mileage. As explained above, BMW argued one mileage set-off, the Ruizes another, and the jury came back with a mileage set-off not specifically proposed by either party. (Spec. Verd., ECF No. 85.) The Ruizes argue that because the jury found BMW breached the implied warranty of merchantability the amount of damages was fixed at the time the Ruizes drove the car off the lot, without any set-off for mileage. (Mot. for Int. 8, ECF No. 106.) However, they cite no authority for this proposition, and the Court does not find this argument persuasive. Because the damages were not liquidated, or reasonably calculable without dispute, the Court declines to apply Section 3287(a), which requires mandatory prejudgment interest. *Duale*, 178 Cal. App. 4th at 729–30. The Court also declines to exercise its discretion to award prejudgment interest under Section 3287(b). Accordingly, the Court **DENIES** the Ruizes's Motion.

## C.    Motion for Attorneys' Fees & Costs

The Ruizes seek $203,966.25 in attorneys' fees, and $23,564.78 in costs and expenses. (Mot. for Fees, ECF No. 96.) BMW contends these fees are excessive, duplicative, and were performed at inflated hourly rates.

### 1.    *Legal Standard for Fees*

The Act provides that a prevailing buyer "shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." Cal. Civ. Code § 1794(d). The inquiry is "whether under all the circumstances of the case the amount of actual time expended and the monetary charge being made for the time expended are reasonable."

*Nightingale v. Hyundai Motor Am.*, 31 Cal. App. 4th 99, 104 (1994) (analyzing non-contingency fee agreement); *see also Doppes v. Bentley Motors, Inc.*, 174 Cal. App. 4th 967, 998 (2009). "If the time expended or the monetary charge being made for the time expended are not reasonable under all the circumstances, then the court must take this into account and award attorney fees in a lesser amount." *Nightingale*, 31 Cal. App. 4th at 104; *see also Levy v. Toyota Motor Sales, U.S.A., Inc.*, 4 Cal. App. 4th 807, 815–16 (1992) (prevailing party not necessarily entitled to all claimed attorneys' fees).

The prevailing buyer bears the burden of demonstrating all of the following: "the [attorneys'] fees incurred were allowable, were reasonably necessary to the conduct of the litigation, and were reasonable in amount." *Nightingale*, 31 Cal. App. 4th at 104 (quoting *Levy*, 4 Cal. App. 4th at 816) (internal quotation marks omitted). The Court retains discretion to reduce the fee award where fees were not reasonably incurred. *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001) ("'[P]adding' in the form of inefficient or duplicative efforts is not subject to compensation."); *Gorman v. Tassajara Dev. Corp.*, 178 Cal. App. 4th 44, 101 (2009) ("A reduced [attorneys' fees] award might be fully justified by a general observation that an attorney overlitigated a case or submitted a padded bill or that the opposing party has stated valid objections.").

*2.    Analysis of Reasonable Attorneys' Fees*

BMW opposes the Ruizes's request for fees because: 1) counsels' hourly rates should be reduced; 2) too many attorneys worked on the case; 3) counsels' billing entries were duplicative, and/or block-billed; 4) attorneys performed work better suited for administrative staff; and 5) counsels' requested lodestar multiplier of 1.5 is not warranted.

**Hourly rates**: The Ruizes's counsel requests hourly rates ranging from $350 to $500 per hour.  (Declaration of Steve Mikhov ("Mikhov Decl.") ¶¶ 27–34, ECF No. 96-2.)  "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing

fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) (citing *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1214 (9th Cir. 1986)). BMW cites *Doppes v. Bentley Motors, Inc.*, where the trial court reduced lead counsel's rate from $400 to $300 per hour. 174 Cal. App. 4th at 987. However, *Doppe* was decided nearly ten years ago, and the Court finds that the fees requested by the Ruizes's counsel are commensurate with their skill levels, experience, complexity of the case, and the results achieved. *See Goglin v. BMW of N.A., LLC*, 4 Cal. App. 5th 462, 470 (2016) (holding the court should consider "factors such as the complexity of the case and procedural demands, the skill exhibited and the results achieved."). While the Ruizes's counsels' rates have been reduced on at least one prior occasion by the Superior Court, the court there was faced with a situation where counsel sought attorneys' fees of $125,055.00, in a case where the damages were only $17,163.83—nearly seven and a half times the verdict. (Opp'n to Mot. for Fees 4, ECF No. 100-1.) In contrast, counsel in this case achieved a substantial verdict, including the maximum civil penalty. Furthermore, these rates take into account the risk associated with taking contingency cases. *See Ketchum*, 24 Cal. 4th at 1132 (discussing higher rate contingency fees to account for risk). Accordingly, the Court finds, based on the facts of this case, that counsels' requested rates are reasonable.

**Number of Attorneys & Duplicative Time Entries**: BMW next argues that this case was overstaffed, which resulted in duplication of efforts without any added benefits. BMW has not done itself any favors in opposing the Ruizes's Motion. Instead of citing to concrete explanations of duplications or erroneous time entries, BMW makes broad statements regarding counsels' billing practices without, in many cases, citation to specific portions of the record. In these circumstances, a well-curated chart is worth a thousand words. Despite this, the Court is duty-bound to analyze counsels' billing on its own.

The Ruizes first were represented by Knight Law Group, and, in September 2017, Wirtz Law APC, associated in as trial counsel. (*See* ECF No. 46.) Leading up to the Pretrial Conference, there were some difficulties in transitioning from Knight Law Group to Wirtz Law. For example, counsel for the Ruizes did not file their pretrial documents, as required. (*See* Plaintiffs' Resp. to OSC re Failure to File Pretrial Docs, ECF No. 44.) In response to an Order to Show Cause (ECF No. 43), Knight Law Group maintained that there was a calendaring error, and that Wirtz Law would prepare and file all pretrial documents. (*Id.*) Despite this, Plaintiffs' counsel failed to attend the Pretrial Conference on September 11, 2017, due to a miscommunication with his office after the Court advanced the hearing to 11:00 a.m., instead of 1:30 p.m. (Min. re Pretrial Conference, ECF No. 60.) The Court then continued the Pretrial Conference to December 4, 2017. (*Id.*)

Although counsel for the Ruizes did not appear at the September 2017 Pretrial Conference, Russel Higgins, of Knight Law Group, entered 4.5 hours of time that day, which he described as: "Prepare for and attend hearing on Pretrial Status Conference (travel included); draft results." (Mikhov Decl. ISO Mot. for Fees, Ex. A at 7, ECF No. 96-2.) The Court cannot fathom how this entry is accurate, and it is not reasonable. Russell Higgins was not trial counsel, did not attend trial, did not appear at the Pretrial Conference, and entered further duplicative entries for reviewing the Court's minutes during trial. (*See id.*) None of this was necessary. Higgins billed 13.6 hours, at a rate of $400, totaling $5,440.00. (*Id.*) In light of the conduct described above, the Court **STRIKES** all of Higgins' billing entries, except 6.7 hours for attendance at the deposition of Jose Conde, which was reasonable. Accordingly, the final award shall be reduced by **$2,760.00**.

After careful review of counsels' itemized billing, the Court **STRIKES** the following additional time entries from Knight Law Group's billing statement:

| Date | Att'y | Rate | Task | Time | Fee | Reason to Strike |
|---|---|---|---|---|---|---|
| 9/12/17 | SBM | $500.00 | Communication with Russell H. re results of Pretrial Status Conference | 0.3 | $150.00 | Higgins did not attend conference; nothing to communicate. |
| 8/1/17 | AH | $325.00 | Review Depo Transcript of Jose Conde; Draft summary | 1.6 | $520.00 | Higgins attended the deposition on 6/1/2017, and logged time to "Draft memorandum;" duplicative. |
| **TOTAL** | | | | | **$670.00** | |

(Mikhov Decl. ISO Mot. for Fees, Ex. A, ECF No. 96-2.)

After careful review of counsels' itemized billing, the Court **STRIKES** the following time entries from Wirtz Law's billing statement:

| Date | Att'y | Rate | Task | Time | Fee | Reason to Strike |
|---|---|---|---|---|---|---|
| 10/17/17 | SAL | $200.00 | Draft, review and revise page line summary of Ruiz Sr.'s deposition. | 2.1 | $420.00 | Duplicative of AH time entry drafting summary on 5/9/17. |
| 10/19/17 | SAL | $200.00 | Review and revise page line summary of Joe Ruiz Jr.'s deposition. | 3.5 | $700.00 | Duplicative of AH time entry drafting summary on 5/27/17 |
| **TOTAL** | | | | | **$1,120.00** | |

(Wirtz Decl. ISO Mot. for Fees, Ex. A, ECF No. 96-3.)

**Administrative Work**: BMW contends counsel for the Ruizes performed tasks better suited for administrative assistants. (Opp'n to Mot. for Fees 11–13.) Many of the tasks involve reviewing the Court's docket for relevant deadlines, and reviewing

notices from the Court. These tasks are generally reasonable for an attorney to perform, and the Court declines to reduce these fees.

**Lodestar Multiplier**: The Ruizes's counsel requests a multiplier of 1.5 to compensate them for the risk they take bringing these contingency cases on behalf of consumers. (Mot. for Fees 14–16.) They cite several orders from Superior Court where courts have awarded their firms similar multipliers. (Mikhov Decl. ISO Mot. for Fees ¶¶ 51, 55 64, 65, 67, 68, 72, 78, 79, 80; Exs. R, V, EE, FF, HH, II, MM, SS, TT, UU.) "A contingent fee contract, since it involves a gamble on the result, may properly provide for a larger compensation than would otherwise be reasonable." *Ketchum*, 24 Cal. 4th at 1132. BMW argues they are not entitled to the multiplier because the case was not complex, and because the Ruizes's counsel overlitigated it. (Opp'n to Mot. for Fees 19–21.) A multiplier of 1.5 is excessive, given that the hourly rates the Court approved are on the higher side, and thus already account for some of the risk. *See Ketchum*, 24 Cal. 4th at 1132 (discussing higher rate contingency fees to account for risk). The Court agrees with BMW that this case was not complex, and therefore the Court finds that a multiplier is not appropriate. Accordingly, the Court **GRANTS** the Ruizes's Motion, **IN PART**, and awards fees, as set forth below:

| Description | Amount |
|---|---|
| Total Fees Requested | $135,977.50 |
| Reduction of Hours for Duplication | $4,550.00[3] |
| **Total** | **$131,427.50** |

*3.    Costs*

The Ruizes request $23,564.78 in costs. (Mot. for Fees 16–17.) In their Motion, they do not provide any itemization of the costs, or supporting evidence. However, in their simultaneously filed Application to the Clerk to Tax Costs, they

---

[3] The Court calculated this value by adding $1,120.00 (reduction from Wirtz Law), $670.00 (part of reduction from Knight Law Group), and $2,760 (reduction of Russel Higgins's time from Knight Law Group).

submit several receipts, but fail to itemize any of the costs, as required by Local Rule 54. BMW does not address the propriety of the costs in its Opposition, but objected to the Ruizes's Application to the Clerk to Tax Costs. (ECF No. 99.)

The Act provides that "the buyer shall be allowed by the court to recover…the aggregate amount of costs and expenses, including attorney's fees based on actual time expended…." Cal. Civ. Code § 1794(d). The Ruizes cite California cases explaining the extent of the costs provided for by the Act, but they have not complied with this Court's Local Rules regarding the taxing of costs. They request approximately $18,000, in "Other Costs," which must be approved by the Court, but fail to provide any accounting for this request. (*See* ECF No. 97.) The Court cannot decipher the stack of receipts the Ruizes submit in support of their application, and thus **DENIES** the Ruizes's request for costs. To the extent the Ruizes seek costs, they must comply with the Local Rules, and provide an itemized statement of their costs with supporting evidence.

## V.    CONCLUSION

For the reasons set forth above, the Court:

1. **DENIES** BMW's Motion for New Trial [103];

2. **DENIES** the Ruizes's Motion to Amend Judgment [102]; and

3. **GRANTS, IN PART**, the Ruizes's Motion for Attorneys' Fees & Costs [96], and awards **$131,427.50** in attorneys' fees.

**IT IS SO ORDERED.**

May 7, 2018

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**